United States District Court
Southern District of Texas
**ENTERED**
June 04, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| Janet Rawl-Bourret, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Case No. 4:23-cv-02054 |
| v. | § | |
| | § | |
| Julie Ann Rawl; Greg Rawl; | § | |
| Ohio National Life Assurance | § | |
| Corporation, | § | |
| | § | |
| *Defendants.* | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

In this insurance dispute, Plaintiff Janet Rawl-Bourret ("Bourret") filed a motion to dismiss Defendant Julie Ann Rawl's ("Rawl") counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 19. Rawl also filed multiple motions to strike, alleging deficiencies in Bourret's filings, or alternatively requesting leave to file a sur-reply. Dkt. 30, 33. The case was referred to the undersigned judge. Dkt. 49. After carefully considering the motions, Rawl's response, Dkt. 26, Bourret's response and reply, Dkt. 31, 36, and the applicable law, it is recommended that Bourret's motion to dismiss (Dkt. 19) be granted in part and denied in part. Rawl's motions to strike Bourret's reply or for leave to file a sur-reply (Dkt. 30, 33) are denied as moot.

Further, Defendant Ohio National Life Assurance Corporation ("ONLAC"), now known as AuguStar Life Assurance Corporation, filed an amended motion for a separate final judgment in interpleader. Dkt. 48. No responses were filed. After considering the motion and applicable law, it is recommended that ONLAC's motion for a separate final judgment under Fed. R. Civ. P. 54(b) be granted.

## Background

This case involves a dispute between siblings over funds allegedly owed by and between them. The allegations concern two distinct trusts—the Carol Rawl Trust ("CR Trust") and the Rawl Irrevocable Family Trust that is the named beneficiary of a life insurance policy ("Policy Trust"). *See* Dkt. 14 at 10; Dkt. 16 at 11. Both trusts have the same three co-trustees, who are also siblings: Rawl, Bourret, and Greg Rawl ("Greg"). *See* Dkt. 16 at 29; Dkt. 47 at 3. Rawl lives in Park City, Utah; Bourret lives in Houston, Texas; and Greg lives Fort Myers, Florida. *See* Dkt. 1 at 1.

### A.    Family history

The following facts are taken from Rawl's counterclaim, Dkt. 16, and are accepted as true at this stage. Carol Rawl was a quadriplegic who died on September 13, 2020. *Id.* at 10, 25. She had three children: Rawl, Bourret, and Greg. *Id.* at 11. In 2011, a Florida court declared Carol incompetent and appointed Greg as her financial guardian. *Id.* at 10. From 2012 to 2014, Greg

2

filed various lawsuits in Florida courts, seeking—unsuccessfully—to transfer their mother to a state-run nursing home and remove Bourret and Rawl as co-trustees of the CR Trust. *See id.* at 11, 13.

During this time, sisters Bourret and Rawl expended personal funds to help cover their mother's care costs—approximately $200,000 per year—and to pay various legal fees. *Id.* at 12-13, 15-16. The sisters retained attorneys to represent them in various legal proceedings in Florida, successfully enjoined Greg from selling the family home below market value, and removed Greg as their mother's financial guardian. *See id.* at 13, 15-17. The sisters also obtained court authorization to move their mother to Texas. *Id.* at 20.

### B.    The sisters' reimbursement dispute

Over the course of these events, the sisters made an oral and reciprocal promise to authorize each other's reimbursement for expenses incurred in connection with their mother's care. Rawl alleges two specific iterations of this oral promise.

First, sometime in 2013 or 2014,

Bourret … promised to Rawl that, once [Greg] was removed as [Carol Rawl's] financial guardian, Bourret would authorize and/or support Rawl's and Bourret's reimbursement for attorneys' fees expended in the litigation that was being prosecuted for or on behalf of their mother from the CR Trust or, if necessary, from the Policy proceeds that would become payable upon their mother's death.

3

*Id.* at 14-15.  In June 2014, a Florida court removed Greg as financial guardian and appointed a third party to replace him.  *Id.* at 17.  The court also ordered reimbursement of the sisters' attorneys' fees out of the CR Trust.  *Id.*  Those funds were dispersed in July 2016.  *Id.* at 18.  Bourret was fully reimbursed at this time, but Rawl received only partial reimbursement.  *Id.* at 18-20.

The second iteration of the oral promise occurred sometime in 2016 or 2017 when "Bourret again assured Rawl that 'all' reimbursements 'for everything' would [ ] definitely be authorized and paid after Carol Rawl was moved to Houston." *Id.* at 19.  Carol Rawl moved to Houston, Texas in August 2017. *Id.* at 20.

But after their mother moved to Houston, Bourret stopped communicating regularly with Rawl and repeatedly refused to authorize reimbursements. *Id.* at 18-20.  Rawl did persuade Greg, however, to authorize some payments for their mother's ongoing care. *Id.* at 25.

On April 9, 2021, Bourret unilaterally closed the CR Trust account without obtaining authorization from Rawl or Greg. *Id.* at 25-26.  The funds were distributed in three equal portions to Bourret, Rawl, and Greg, without regard to reimbursements that might be owed. *Id.*

## C.   The dispute over proceeds of the life insurance policy

During her life, Carol Rawl and her husband Jasper obtained a $1,000,000 life insurance policy from ONLAC that was payable to the Policy

4

Trust upon their death.  Dkt. 14 at 10.  They also designated Rawl, Bourret, and Greg as equal beneficiaries and co-trustees of the Policy Trust.  *Id*. at 11. Jasper Rawl died in 2008 and Carol died on September 13, 2020.  *Id*. at 13.

On April 16, 2021, Rawl submitted a death claim form, asserting that the Policy Trust's address is in Park City, Utah.  *Id*.  On May 1, 2021, Bourret submitted a separate form with a Houston, Texas address for the Policy Trust. *Id*.  ONLAC had "several communications" with the parties, but they "were unable to reach an agreement."  *Id*. at 13-14.  Rawl, Bourret, and Greg each have actual or potential claims to the policy proceeds, as individuals and in their capacities as co-trustees of the Policy Trust.  *Id*. at 15.

### D.   Procedural history

Bourret sued Rawl, Greg, and ONLAC on June 5, 2023, alleging "a dispute about the correct amounts of distributions that should be made as well as where the distributions should be made."  Dkt. 1 at 2.  Rawl responded with four counterclaims: breach of contract, promissory estoppel, unjust enrichment, and breach of fiduciary duty.  Dkt. 16 at 27-30.  The counterclaims largely relate to the handling of CR Trust funds.  *See id*. at 10-30.

Bourret moved to dismiss Rawl's counterclaims under Fed. R. Civ. P. 12(b)(6).  Dkt. 19.  The parties filed multiple motions, Dkt. 30, 33, and related briefs, Dkt. 26, 28, 31, 36, 40, 42, pertaining to Bourret's motion to dismiss.

As for ONLAC, it did not dispute its obligation to pay the policy proceeds of $1,000,000, plus interest. *See* Dkt. 14 at 13. But the conflicting claims from Rawl, Bourret, and Greg prompted ONLAC's motion for leave to deposit the policy proceeds in an interpleader action, *see* Dkt. 39, which was granted, Dkt. 41. After depositing the interpleader funds in the Court's registry, *see* Dkt. 48-1 at 2, ONLAC moved for final judgment and dismissal of all claims. Dkt. 44. In parallel, Bourret filed a stipulation to dismiss with prejudice her claims against ONLAC. Dkt. 43. The Court then entered an order dismissing all claims against ONLAC. Dkt. 45.

ONLAC amended its motion for entry of final judgment, stipulating to the dismissal of its claim for injunctive relief and requesting (1) a finding that it acted in good faith by depositing the interpleader funds, (2) a finding of no further liability and (3) a separate, final judgment and dismissal of ONLAC from the case. Dkt. 48 at 3, 10-11. Rawl and Bourret did not oppose the motion, and Greg did not respond. *Id.* at 12.

## Analysis

The Court first addresses Bourret's motion to dismiss, which targets Rawl's counterclaims seeking reimbursement of certain expenses incurred during their mother's life. *See* Dkt. 19. In connection with that motion, Rawl requests that the Court strike Bourret's reply brief. *See* Dkt. 30, 33.

6

Separately, ONLAC filed an unopposed motion for final judgment in interpleader, Dkt. 48.  These motions are addressed in turn.

## I.   All of Rawl's counterclaims, except for breach of fiduciary duty, are barred.

In her Rule 12(b)(6) motion, Bourret raises several grounds for dismissal of Rawl's counterclaims for breach of contract, promissory estoppel, unjust enrichment, and breach of fiduciary duty.  According to Bourret, those counterclaims are barred by the statute of limitations, the statute of frauds, or other pleading deficiencies.  Dkt. 19.

As concluded below, Bourret is correct that most of Rawl's claims are untimely.  But the allegations indicate that one theory under Rawl's breach of contract and promissory estoppel claims is not yet ripe and must be dismissed for lack of jurisdiction, rather than on the merits.  These conclusions render it unnecessary to reach Bourret's alternative reliance on the statute of frauds.  The breach of fiduciary duty counterclaim, however, is both timely and adequately pleaded.

### A.   Rule 12(b)(6): legal standard

Dismissal under Rule 12(b)(6) is warranted if a party fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rather, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (analyzing *Twombly*, 550 U.S. at 555-56). When resolving a Rule 12(b)(6) motion, the court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (internal quotation marks omitted).

> **B.   The statute of limitations precludes most of Rawl's breach of contract and promissory estoppel theories, as well as her unjust enrichment counterclaim.**

As her lead contention, Bourret argues that Rawl's counterclaims are untimely. Dkt. 19 at 5-6. "A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling." *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014).

Rawl responds that her counterclaims are timely because they accrued within the limitations period.[1]  Dkt. 26 at 6-9.  In the alternative, Rawl asserts that her counterclaims arise out of the same transaction or occurrence as Bourret's claims, and thus are exempt from the limitations period under Texas Civil Practice and Remedies Code § 16.069.  *Id.* at 10-12.

1.     The breach of fiduciary duty claim is timely.

Bourret's reliance on the statute of limitations is misplaced with respect to Rawl's breach-of-fiduciary-duty counterclaim.   "Actions for breach of fiduciary duty are governed by a four-year statute of limitations."  *Marcus & Millichap Real Est. Inv. Servs. of Nev., Inc. v. Triex Tex. Holdings, LLC*, 659 S.W.3d 456, 461 (Tex. 2023) (per curiam) (citing Tex. Civ. Prac. & Rem. Code § 16.004(a)(5)).   "A cause of action for breach of fiduciary duty generally accrues, and limitations begins to run, when the claimant knows or should know of the wrongful injury."  *Id.* at 459.

Based on Rawl's pleading, the alleged breach of fiduciary duty occurred on April 9, 2021.  Dkt. 16 at 25.  That was when Bourret unilaterally closed the CR Trust account and ordered that the proceeds be distributed without giving Rawl an opportunity to assert claims for reimbursement against those

---

[1] Rawl also maintains that the Court must disregard this argument as a matter of law because Bourret failed to assert a date at which these claims began to accrue for limitations purposes.  *Id.* at 6.  That is inaccurate.  Bourret explicitly asserts that Rawl's "claims accrued in 2017."  Dkt. 19 at 4; *see also* Dkt. 31 at 1.

9

funds. *Id.* at 25-26, 29.  It was also the earliest conceivable date when Rawl could have learned of her resulting injury.  Rawl filed her counterclaim less than two-and-a-half years later, on August 22, 2023.  *See id.*  The breach of fiduciary duty counterclaim is timely.

> ### 2.    Rawl's breach-of-contract and promissory estoppel theories premised on reimbursement from the CR Trust are barred by limitations.

Rawl's breach-of-contract and promissory estoppel counterclaims concern an alleged oral promise that she and Bourret would authorize each other's reimbursement for attorneys' fees and expenses incurred caring for their mother, and do so from the CR Trust, the Policy Trust, or some other source. *See id.* at 15, 19, 27-30.  Rawl alleges that she satisfied her obligations by ensuring that Bourret was fully reimbursed for all expenses, but Bourret did not fulfill her end of the bargain.  *See id.* at 18, 25, 27-28.

Rawl characterizes the promise as a single oral agreement that was reiterated over time.[2]  *See generally id.* (consistently referring to a single agreement).  But the alleged promises concern two different sources for reimbursement.  One theory concerns the CR Trust, and the other concerns the Policy Trust.  According to Rawl, Bourret breached her promise to authorize

---

[2] Bourret also asserts that the oral promise fails to satisfy the statute of frauds. Dkt. 19 at 6-9; Dkt. 31 at 1-5.  The Court finds it unnecessary to reach this issue because dismissal is warranted on other grounds.

reimbursement (1) out of the CR Trust when she unilaterally closed the account on April 9, 2021, and (2) out of the Policy Trust when Carol Rawl died on September 13, 2020. *See* Dkt. 26 at 4, 8. As explained below, the CR Trust theory is untimely. Rawl's alternative Policy Trust theory, analyzed separately below, suffers from the opposite problem in that it is not ripe for resolution. *See infra* Part I.C.

a.   *The CR Trust theory is time-barred.*

Rawl's first theory alleges that Bourret breached her promise to reimburse Rawl's expenses out of the CR Trust. Rawl asserts that this breach did not occur—and limitations did not begin to run—until Bourret closed the CR Trust in April 2021. *See* Dkt. 26 at 4. Bourret replies that the breach occurred much earlier and is therefore time-barred. *See* Dkt. 31 at 1-2. But Rawl counters that different accrual rules should apply. Dkt. 26 at 6-7.

Texas law imposes a four-year limitations period for breach of contract and promissory estoppel claims. *See Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (per curiam) (breach of contract); *Prestige Ford Garland Ltd. P'ship v. Morales*, 336 S.W.3d 833, 836 (Tex. App.—Dallas 2011, pet. denied) (promissory estoppel); Tex. Civ. Prac. & Rem. Code § 16.051 (residual provision for actions that have no express limitations period). "As a general rule, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Provident Life*

& *Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). Under that rule,
breach of contract and promissory estoppel claims accrue when the promise is
breached. *See Archer v. Tregellas*, 566 S.W.3d 281, 288 (Tex. 2018) (breach of
contract); *Prestige Ford Garland Ltd.*, 336 S.W.3d at 837 (promissory estoppel).

Rawl's CR Trust theory is timely only if the breach occurred less than
four years before she filed her counterclaims. Determining when Bourret
breached her promise depends on when her performance was due. Rawl's
pleading indicates that Bourret's reimbursement obligation with respect to the
CR Trust was triggered on two different dates.[3]

First, Rawl asserts that in late 2013 or early 2014, "Bourret ... promised
Rawl that, *once [Greg] was removed as her financial guardian*, Bourret would
authorize and/or support Rawl's and Bourret's reimbursement for attorneys'
fees expended in the litigation that was being prosecuted for or on behalf of
their mother."[4]  Dkt. 16 at 14-15 (emphasis added). Greg was removed as
financial guardian in June 2014. *Id.* at 17.

Second, in late 2016 or early 2017—although the original promise
remained unfulfilled—Bourret allegedly promised "that 'all' reimbursements
'for everything' would [ ] definitely be authorized and paid *after Carol Rawl*

---

[3] Rawl does not assert, in her counterclaim or otherwise, that any of Bourret's
reimbursement promises restarted the limitations clock.

[4] As noted, the remaining component of this promise, which concerns reimbursement
from the separate Policy Trust, is analyzed separately *infra*, Part I.C.

*was moved to Houston.*"  *Id.* at 19 (emphasis added).  Carol Rawl moved to Houston in August 2017.  *Id.* at 20.

On the face of Rawl's pleading, Bourret's obligation to support Rawl's reimbursement from the CR Trust was triggered either in June 2014—upon Greg's removal as financial guardian—or August 2017—when their mother moved to Houston.  *See id.* at 17, 19.  At both junctures, Bourret had the power to support Rawl's request for reimbursement.  *See id.* at 13, 25 (Bourret's status as co-trustee of the CR Trust in 2013 through 2021).  Yet Bourret did not do so in either June 2014 or August 2017—thereby breaching her oral promise to Rawl.  Thus, Rawl's counterclaims premised on failure to reimburse from the CR Trust accrued at least six years before she filed them.  *See id.* (counterclaim filed on August 22, 2023).  Those counterclaims fall well outside the four-year limitations period.

        b.    *Rawl's reliance on a continuing-contract theory does not extend the accrual date.*

Rawl argues that "different accrual rules apply" to the oral reimbursement promise because Bourret could have performed it until the CR Trust was closed in April 2021.  Dkt. 26 at 6-7.  In support, Rawl cites cases where courts declined to apply general accrual rules to agreements classified as continuing contracts.  *Id.* (citing *Angell v. Culpepper*, 2021 WL 5018758, at *10 (Tex. App.—Austin Oct. 29, 2021, no pet.) (option agreement to purchase

property) and *US MCT, Inc. v. Brodsky*, 2001 WL 1360301, at *8 (Tex. App.—Dallas Nov. 7, 2001, pet. denied) (joint venture agreement requiring biannual contributions)).[5] The oral agreement here does not fit that classification.

In continuing contracts, "performance is made in measurable increments and compensated based on the value of work completed in each period, and for which there is a clear end-point." *Dell Computer Corp. v. Rodriguez*, 390 F.3d 377, 391 (5th Cir. 2004). Construction projects are a prime example. *See id.* If, however, a contract "call[s] for periodic payments during the course of the contract, a cause of action for such payments may arise at the end of each period, before the contract is completed." *Repub. Parking Sys. of Tex., Inc. v. Med. Towers, Ltd.*, 2004 WL 2358315, at *8 (Tex. App.—Houston [14th Dist.] Oct. 21, 2004, pet. denied) (citing *Townewest Homeowners Assoc. Inc. v. Warner*, 826 S.W.2d 638, 640 (Tex. App.—Houston [14th Dist.] 1992, no writ)). In *Republic Parking*, for instance, a defendant's obligation to "turn over all of

---

[5] Rawl also cites *ASARCO, L.L.C. v. Montana Resources, Inc.*, 858 F.3d 949, 957 (5th Cir. 2017), asserting there is no accrual when breach is contingent on future events. Dkt. 26 at 6-7. That case involved the doctrine of claim preclusion, not the statute limitations. *See ASARCO, L.L.C.*, 858 F.3d at 957. To the extent that *ASARCO* mentions accrual of claims, the court only noted that a party could not have pursued its claim earlier because "the facts that spurred the present breach of contract claim ... had not occurred at the time of the prior suit." *Id.* In contrast, Rawl's own allegations show that Bourret had already breached her reimbursement obligation in 2014 and 2017. *See supra* Part I.B.2.a.

the revenue" for managing a parking garage was not a continuing contract because the agreement called for "periodic payments." *See id.* at *9.

Much as the contract in *Republic Parking* required periodic payments, the oral agreement here called for authorization of specific payments upon specific events—either Greg's removal as guardian or Carol Rawl's move to Texas.  As a result, the oral agreement does not qualify as a continuing contract.  Moreover, Rawl's pleading reflects that Bourret failed to authorize those payments when those events occurred in June 2014 and August 2017, respectively.[6]  *See supra* Part I.B.2.a.  Bourret's failure to rectify that breach later, including upon closing the CR Trust in April 2021, does not restart the limitations clock on non-payment injuries sustained at the latest in 2017. Rawl's continuing contract theory is meritless.

### 3.   Rawl's unjust enrichment claim is untimely.

Rawl's unjust enrichment counterclaim is based on the same oral promise.  She alleges that Bourret took undue advantage of Rawl's "trust and good faith" and obtained a personal benefit when Rawl fulfilled her end of the bargain by authorizing Bourret's reimbursement payments.  Dkt. 16 at 29-30.

---

[6] Rawl characterizes Bourret's failure to reimburse in 2017 as insufficiently definite to qualify as an anticipatory repudiation.  *See* Dkt. 26 at 6-8.  The Court need not resolve this issue because "all facts required for a cause of action existed" as of August 2017, at the latest, thereby starting the limitations clock.  *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998).

Unjust enrichment claims are subject to a two-year statute of limitations. *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007) (per curiam) (citing Tex. Civ. Prac. & Rem. Code § 16.003). "A claim for unjust enrichment accrues when a party receiving property or benefits would be unjustly enriched if it were permitted to retain the property or benefits at the expense of another." *Enventure Glob. Tech., Inc. v. Mowhawk Energy, Ltd*, 2016 WL 6820761, at *6 (S.D. Tex. Sept. 26, 2016); *Clark v. Dillard's, Inc.*, 460 S.W.3d 714, 720 (Tex. App.—Dallas 2015, no pet.).

According to Rawl's pleading, the last authorized reimbursement occurred in July 2016, after their mother's home was sold. *See* Dkt. 16 at 18. At that point, Bourret was fully reimbursed, a benefit that is arguably unjust if she did not keep her side of the bargain. *See id.* at 20. But Rawl waited another seven years before filing her counterclaim. *See id.* That is long after the limitations period expired. Moreover, the unjust enrichment claim is untimely even assuming it accrued on April 9, 2021, the latest date Rawl proposes. That would still be more than two years before Rawl filed this claim. *See* Dkt. 26. Under any measure, the unjust enrichment claim is time-barred.

4.   <u>The counterclaim rule does not save Rawl's untimely theories and claims.</u>

Rawl argues that Section 16.069 of the Texas Civil Practice and Remedies Code allows her to pursue her breach of contract, promissory

estoppel, and unjust enrichment claims even if they are otherwise untimely. *See id.* at 10-12. Bourret replies that Section 16.069 does not apply because Rawl's claims do not rely on the same underlying facts or arise from the same transaction or occurrence as Bourret's original claim. *See* Dkt. 31 at 3-4.

Section 16.069, known as the counterclaim rule, permits a party to assert a counterclaim within 30 days of a party opponent's original claim, without regard to the statute of limitations, if it "arises out of the same transaction or occurrence that is the basis of an action." Tex. Civ. Prac. & Rem. Code Ann. § 16.069. "To arise from the same transaction, at least some of the facts must be relevant to both claims." *Cmty. State Bank v. NSW Invs., L.L.C.*, 38 S.W.3d 256, 258 (Tex. App.—Texarkana 2001, pet. denied); *see also Rodriguez v. CitiMortgage, Inc.*, 2015 WL 12552026, at *4 (W.D. Tex. Feb. 4, 2015).

Bourret's original complaint addresses the dispersal of interpleader funds and fiduciary duties under the Policy Trust. Only two factual allegations are common to both pleadings: (1) the death of Carol Rawl in 2020; and (2) the proceeds from her life insurance policy that have yet to be paid into the Policy Trust. *Compare* Dkt. 16 at 25-26, *with* Dkt. 47 at 2. Unlike Bourret's complaint, Rawls's allegations concern expenses incurred and amounts that supposedly should have been reimbursed to her long ago, in 2014 and 2017, and out of the separate CR Trust. *See supra* Part I.B.2.a-b. Those

counterclaims do not arise out of the same transaction or occurrence as Bourret's original complaint.

Those few overlapping facts are also irrelevant to Rawl's unjust enrichment counterclaim. Her allegations of undue advantage stem from Bourret's receipt of reimbursements from the CR Trust or Rawl herself. *See* Dkt. 16 at 20, 27-28. The CR Trust is distinct from the Policy Trust and is wholly unrelated to Bourret's original claims. Unlike Rawl's counterclaim, Bourret's complaint does not allege that she or anyone else is owed reimbursement for past attorneys' fees or expenses related to their mother's care. *See generally* Dkt. 47.

Rawl argues that Bourret placed reimbursements at issue because the original complaint requests distribution "except for reimbursement of Policy premiums and/or winding up costs."[7]   Dkt. 1 at 3; Dkt. 26 at 11.   But reimbursement under the Policy Trust's terms has no bearing on the type of reimbursement sought by Rawl. For example, Rawl argues that under Tex. Bus. Org. Code § 11.053, winding up the Policy Trust must make provisions to settle liabilities, like trustees' personal payment of life insurance premiums. Dkt. 26 at 11 n.3. But Rawl does not claim that she paid, nor does she seek reimbursement for, analogous expenses. And Rawl has not alleged that the

---

[7] Bourret's second amended complaint—which Rawl did not oppose—removed this language and asks only for disbursement under the Policy's terms. *See* Dkt. 37, 47.

Policy Trust or the life insurance policy specify whether she can obtain reimbursement of other, unrelated expenses—much less from the separate and distinct CR Trust.   The counterclaim rule, Tex. Civ. Prac. & Rem. Code § 16.069, does not save Rawl's untimely counterclaims.

### C.   Rawl's breach-of-contract and promissory estoppel theories based on the Policy Trust are unripe.

The second theory underlying Rawl's breach-of-contract and promissory estoppel counterclaims asserts that Bourret promised to authorize reimbursement out of the Policy Trust, if necessary.   Despite debating the timeliness of that Policy Trust theory under the limitations framework, the parties' arguments confirm that this theory is not ripe and should be dismissed *sua sponte* for lack of jurisdiction.   Because "ripeness [is an] essential component[ ] of federal subject-matter jurisdiction," its absence "can be raised at any time by a party or by the court."  *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005).[8]

Far from being untimely, Bourret's alleged obligation to support Rawl's reimbursement out of the Policy Trust has yet to accrue.   According to the pleadings, the reimbursement obligation is triggered only once the policy proceeds become payable.  *See* Dkt. 16 at 15.   But because Rawl and Bourret

---

[8] Bourret's reply brief argues that Rawl's complaint is contingent on future events. *See* Dkt. 31 at 3-4.  But she has not acknowledged how that affects the ripeness of this claim, nor has she moved to dismiss on that basis.

submitted competing death claim forms, ONLAC could not pay any of the proceeds.  *See* Dkt. 14-5 at 2 (Rawl); Dkt. 14-6 at 2 (Bourret).  Those proceeds remain in the registry of this Court.  They have not been deposited in the Policy Trust, such that Bourret would have any authority as a co-trustee to authorize their disbursement.  *See* Dkt. 16 at 26-27; Dkt. 47 at 2; *see also, e.g.*, *GeoSouthern Energy Corp. Inc. v. Certain Underwriters at Lloyd's London*, 2017 WL 5163367, at *8 (W.D. Tex. Feb. 24, 2017) ("[A] failure to perform is not a breach if time for performance has not yet occurred.").

Rawl's Policy Trust theory depends on Bourret's future refusal to perform, which may or may not occur.  When an essential element of a claim is "'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all,' the claim is not ripe for adjudication."  *See Lopez v. City of Hous.*, 617 F.3d 336, 342 (5th Cir. 2010) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)).  Rawl does not allege that Bourret has refused to disperse funds at a future date once the insurance proceeds are paid into the Policy Trust.  Quite the contrary, Rawl argues that Bourret has *not* repudiated her obligation to authorize that disbursement.  *See* Dkt. 26 at 8 ("Far from an unequivocal repudiation, the alleged statements by Bourret in fact confirmed her intention to *comply* with the agreement.").

The Policy Trust theory underlying Rawl's breach of contract and promissory estoppel counterclaims is therefore not ripe for resolution.  The

proper remedy is to dismiss this theory without prejudice. *See Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994) (unripe claim must be dismissed without prejudice for lack of jurisdiction); *Navarro v. Berkley Se. Ins. Grp.*, 2020 WL 9934622, at *2 (S.D. Tex. Sept. 11, 2020) (dismissing premature breach-of-contract claim without prejudice because duty to pay had not arisen).

### D. Rawl has sufficiently pleaded a breach of fiduciary duty claim.

Apart from her limitations defense, Bourret argues that the breach of fiduciary duty counterclaim is inadequately pleaded. Dkt. 19 at 9-10. Specifically, Bourret contends that Rawl has identified no basis for a fiduciary duty nor explained how such a duty was breached. *Id.* The Court disagrees.

"[T]he elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). Bourret's arguments target the first and second elements: duty and breach.

As the basis for a fiduciary duty, Rawl's counterclaim invokes Bourret's status as a co-trustee of the CR Trust. Dkt. 16 at 29. Under Texas law, co-trustees owe a fiduciary duty to each other, the trust, and all beneficiaries. *See In re Tr. A & Tr. C. Established Under Bernard L. & Jeannette Fenenbock Living Tr. Agreement*, --- S.W.3d ---, 2024 WL 2095989, at *7 (Tex. May 10,

2024).   Indeed, Bourret's own live pleading asserts that Rawl and Greg breached their fiduciary duties to *her* as co-trustees of the Policy Trust.   *See* Dkt. 47 at 3 (amended complaint).   The same principle applies equally to Bourret who, as a co-trustee of the CR Trust, owed a fiduciary duty to Rawl.

Bourret maintains that her unilateral closure of the CR Trust did not breach her fiduciary duty because she merely acted as "mandated upon the death of" their mother.   *See* Dkt. 19 at 9.   But as Rawl notes, Dkt. 26 at 14, this argument improperly attempts to inject facts extrinsic to her pleading.

At this stage, the Court must confine its analysis to the counterclaim alone.   The counterclaim asserts that the CR Trust prohibits disbursements without the authorization of at least two co-trustees.   *See* Dkt. 16 at 15.   It further alleges that Bourret violated this prohibition by closing the CR Trust without obtaining Rawl's or Greg's permission, directing the funds to be dispersed in equal thirds, and thwarting Rawl's ability to seek reimbursement of expenses from that trust.   *See id.* at 25-26.   These allegations plausibly suggest that Bourret breached her fiduciary duty to Rawl.   Dismissal of this claim should be denied.

## II.   **Rawl's procedural motions are denied.**

As noted earlier, Bourret raised the statute of frauds as an alternative basis for dismissing Rawl's counterclaim for breach of an oral contract.   *See*

Dkt. 19 at 8-9.  This assertion spurred many additional filings, including two motions to strike, Dkt. 30, 33, and related briefs, Dkt. 36, 40, 42.

Rawl first filed a motion to strike Bourret's original reply brief, Dkt. 28, for violating the Court's page limit and raising a new argument.  Dkt. 30.  In the alternative, Rawl requested leave to file a sur-reply.  Dkt. 30.  Bourret then cured her page-limit deficiency by filing a shorter reply.  *See* Dkt. 31.  Rawl's first motion to strike (Dkt. 30) is therefore denied as moot.

After Bourret filed a corrected reply, Rawl renewed her objection and request for sur-reply, this time alleging that Bourret's reply brief raised a new argument that the oral agreement falls within the statute of frauds, Tex. Bus. & Comm. Code § 26.01(b)(2), as a promise to pay the debts incurred in the care of their mother.  *See* Dkt. 33.  But that was *not* a new argument.  Bourret's motion to dismiss explicitly invoked Section 26.01(b)(2), along with supporting authority.  *See* Dkt. 19 at 8-9.  For that reason alone, the Court denies Rawl's motion (Dkt. 33) to strike the new reply or for leave to file a sur-reply.

## III.   <u>ONLAC is entitled to entry of a separate final judgment under Rule 54(b).</u>

The last issue concerns ONLAC's request for relief.  Other than its admitted liability under the insurance policy, ONLAC is a third party with no interest in the outcome of this suit.  After obtaining permission, Dkt. 41, ONLAC deposited the policy proceeds in the Court's registry, Dkt. 48-1 at 2.

The amount due is uncontested. All claims against ONLAC have been dismissed. *See* Dkt. 45.

Accordingly, ONLAC filed a motion for final judgment in interpleader, requesting various findings and dismissal from the case. Dkt. 44, 48. ONLAC's amended motion also stipulates to dismissal of its original crossclaim for injunctive relief. Dkt. 48 at 3. Rawl and Bourret agreed to ONLAC's motion and do not oppose ONLAC's dismissal. *See* Dkt. 48 at 12. Greg did not respond and is deemed unopposed. *Id*.; S.D. Tex. L.R. 7.4.

"An interpleader action typically involves two stages. In the first stage, the district court decides whether the requirements for rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund." *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999). During the second stage, the district court determines "the respective rights of the claimants." *Id*.

Here, the first requirements for interpleader are easily met. The policy proceeds comprise a single fund that has already been deposited with the Court. There are also adverse claims to those proceeds, as reflected by ONLAC's receipt of conflicting death claim forms. *See* Dkt. 14-5 at 2 (Rawl); Dkt. 14-6 at 2 (Bourret). And the dispute over proper dispersal of the proceeds lies at the heart of Bourret's original complaint. *See* Dkt. 1; *see also* Dkt. 47. Moreover, the Court has already granted ONLAC's motion to deposit

interpleader funds and no claims against ONLAC remain pending.  Dkt. 41,

45.  Interpleader is therefore available.

For the second stage, ONLAC has three requests concerning its

respective rights: (1) a finding that it acted in good faith by depositing the

interpleader funds; (2) a finding of no further liability; and (3) a separate final

judgment under Fed. R. Civ. P. 54(b) and dismissal of ONLAC from the case.

*See* Dkt. 48 at 10-11.  For the first request, ONLAC is entitled to a finding of

good faith.  After receiving competing claims, ONLAC attempted to settle this

dispute outside of the legal system by "exchang[ing] several communications

with [the] co-trustees" of the Policy Trust.  *See* Dkt. 14 at 14.  Only after the

parties could not resolve the dispute, and Bourret filed this suit, did ONLAC

file its crossclaim.  *See id.*  ONLAC then promptly deposited the interpleader

funds after receiving authorization.  *Compare* Dkt. 41 (authorizing

interpleader on March 12, 2024), *with* Dkt. 48-1 at 2 (funds deposited March

22, 2024).  Moreover, no party has argued that ONLAC acted in bad faith.  In

sum, "there is no evidence that [ONLAC] acted in any manner other than with

diligence and in good faith."  *See Sun Life Assur. Co. of Can. v. Flies*, 2011 WL

13217655, at *2 (E.D. Tex. Apr. 11, 2011).  ONLAC has therefore acted in good

faith by interpleading the proceeds of the life insurance policy and depositing

them with this Court.

Second, ONLAC's request for a finding of no further liability is justified. "[I]f the stakeholder is disinterested and the court finds interpleader is available, a 'district court … may discharge the plaintiff from further liability.'" *See Transamerica Annuity Serv. Corp. v. Symetra Life Ins. Co.*, 2017 WL 467970, at *3 (S.D. Tex. Feb. 3, 2017) (quoting 28 U.S.C. § 2361). ONLAC asserts it is "indifferent as to which of the claimant(s) [are] entitled" to the life insurance proceeds. *See* Dkt. 14 at 15. And as explained above, interpleader is available, and the proceeds have already been deposited with this Court. This Court should therefore find that ONLAC has no further liability to Rawl, Bourret, or Greg, whether individually or in their capacities as co-trustees of the Policy Trust.

Lastly, a separate, final judgment under Fed. R. Civ. P. 54(b) is warranted. "Although Rule 54(b) requests should not be granted routinely, 'it is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal.'" *Brown v. Miss. Valley State Univ.*, 311 F.3d 328, 332 (5th Cir. 2002) (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.,* 446 U.S. 1, 8, 100 (1980)). The Court must make "an express determination that there is no just reason for delay." *Reiter v. Cooper*, 507 U.S. 258, 265 (1993) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435 (1956)).

ONLAC is a disinterested stakeholder.  No party has asserted that he or she would be harmed by ONLAC's dismissal.  To the contrary, the remaining claims do not require ONLAC's inclusion in this case.  Given that ONLAC has no remaining stake in this case, there is no just reason for delay.  Under Rule 54(b), this Court should enter a separate final judgment excusing and dismissing ONLAC from this case.

## Order and Recommendation

For the foregoing reasons, it is **ORDERED** that Defendant Julie Ann Rawl's motions to strike (Dkt. 30, 33) are **DENIED**.

It is further **RECOMMENDED** that Plaintiff Janet Rawl-Bourret's motion to dismiss (Dkt. 19) be **GRANTED IN PART** with respect to Defendant Rawl's (1) unjust enrichment counterclaim (Dkt. 16, Count VI); and (2) breach-of-contract and promissory estoppel counterclaim theories asserting failure to reimburse from the CR Trust (*id.*, Counts I & II, in part), which should be **DISMISSED WITH PREJUDICE** as untimely.

It is further **RECOMMENDED** that the motion to dismiss (Dkt. 19) be **DENIED IN PART** as to the counterclaim for breach-of-fiduciary-duty (Dkt. 16, Count III).

It is further **RECOMMENDED** that Defendant Rawl's breach-of-contract and promissory estoppel counterclaim theory premised on failure to reimburse from the Policy Trust (*id.*, Counts I & II, in part) should be

**DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

It is also **RECOMMENDED** that Defendant Ohio National Life Assurance Corporation's motion for final judgment order in interpleader (Dkt. 48) be **GRANTED**, and that a separate final judgment be entered, pursuant to Fed. R. Civ. P. 54(b), dismissing ONLAC from this case.

For clarity, resolution of the foregoing motions does not affect Plaintiff Rawl-Bourret's pending claims for declaratory judgment and breach of fiduciary duty against Rawl and Greg (Dkt. 47).

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on June 4, 2024, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge